## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Teresa Byars, | **Case No.:** 2:24-cv-13183 |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Equifax Information Services, LLC, Experian Information Solutions, Inc., | 1. FCRA, 15 U.S.C. § 1681 *et* |
| Defendants. | *seq.* |

Plaintiff Teresa Byars ("Plaintiff"), by and through her attorneys, and as for her Complaint against Defendant Equifax Information Services, LLC ("Equifax") and Defendant Experian Information Solutions, Inc. ("Experian"), Collectively referred to as "Defendants "respectfully sets forth, complains, and alleges, upon information and belief, the following:

### INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends that the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the

1

consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because, Plaintiff resides here, Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the State of Michigan, County of Macomb.

6.      At all times material hereto, Plaintiff was a "consumer" as said term is defined under 15 U.S.C. § 1681a(c).

7.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's registered agent is CSC-Lawyers Incorporating Service (Company) located at 3410 Belle Chase Way Ste 600 Lansing, MI 48911-4274.

8.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian can be served c/o its registered agent The Corporation Company located at 40600 Ann Arbor Rd E Suite 201 Plymouth, MI 48170-4675.

9.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

10.     Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants

regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

11.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## **FACTUAL BACKGROUND**

### *The Role of Credit Reporting Agencies*

13.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

14.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16.    The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17.    Defendants, three major consumer reporting agencies (at times referred to collectively as "the CRAs or Defendants" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

18.    Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to

rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

19.    Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be independently gathered by Defendants, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

20.    Defendants also obtain information from other CRAs, who commonly share information.

21.    Defendants regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Defendants sell to third parties for a profit.

22.    The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23.    Defendants' unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

24.     Defendants know the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in its own files.

25.     Defendants failed to conduct a reasonable investigation into a dispute when it fails to notice the self-evident information Defendants already obtain regarding consumers.

26.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

27.     The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

28.     FICO Scores are calculated using information contained in Defendants' consumer reports.

29.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

30.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a.    "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b.    The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

31.    Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports.

32.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

33.    Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendants.

34.     A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

35.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

36.     Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

37.     Defendants are well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

38.     However, Defendants regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

39.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts and post-bankruptcy debts based on incomplete or knowingly inaccurate information.

40.     Defendants regularly publish consumer information that conflicts with the information provided by data furnishers, included in Defendants' credit files,

contained in public records that Defendants regularly access, and/or sourced through Defendants' independent and voluntary efforts.

41.    Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

42.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate consumer reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

43.    Therefore, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

### *Plaintiff's Chapter 7 Bankruptcy and Pre-Bankruptcy Account*

44.    In or around December 28, 2018, Plaintiff took out an auto loan with Clean Cars Finance, to finance a vehicle.

45.    On or around July 8, 2022, Plaintiff opened an account with Comenity/Sephora.

46.    The Clean Cars Finance account and the Comenity/Sephora account collectively hereinafter may be referred to as "Accounts".

47.    On March 26, 2024, Plaintiff filed a Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan, petition no. 2:24bk42949.

48.    The Clean Cars account was included in Plaintiff's Chapter 7 Bankruptcy.

49.    The Comenity/Sephora account was included in Plaintiff's Chapter 7 Bankruptcy.

50.    Plaintiff received an Order of Discharge for his bankruptcy on July 11, 2024.

51.    Since the Clean Cars Finance account and the Comenity/Sephora account were both opened prior to the filing of Plaintiff's Chapter 7 Bankruptcy and because they were both included in Plaintiff's Chapter 7 Bankruptcy filings, the balances have been discharged and should be noted as such, and Plaintiff has no obligation to pay anything further on these Accounts.

*The Inaccuracies on Defendants' Consumer Reports*

52.    On or around August 2024, Plaintiff reviewed her credit reports from Equifax and Experian.

53.    The Equifax credit report includes the Clean Car account with a past due amount of $2,110.00 with no mention of the Account being included in bankruptcy.

54.    The Experian credit report includes the Clean Cars account as in repossession/foreclosure with a current balance of $2110 with no mention of the Account being included in bankruptcy

55.    The Equifax credit report includes the Comenity/Sephora account as a charge-off.

56.    These Accounts are reporting as charged off with outstanding balances without any mention of Plaintiff's bankruptcy, when they should be reporting with a zero balance and discharged in bankruptcy.

57.    Defendants misrepresented the Accounts by failing to report it as a debt discharged in Plaintiff's Chapter 7 Bankruptcy.

58.    The Plaintiff reviewed her credit reports after receiving her discharge from Bankruptcy.

59.    These credit reports were created after Plaintiff received an Order of Discharge.

60.    The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on the consumer reports prepared by the Defendants.

61.    Furnishers reported the Plaintiff's bankruptcy and discharge information to Defendants.

62.     Defendants knew or should have known about Plaintiff's Chapter 7 Bankruptcy and which accounts were discharged in Plaintiff's bankruptcy and that these specific Accounts were discharged in Plaintiff's Chapter 7 Bankruptcy.

63.     In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Defendants through multiple sources such as PACER, but Defendants failed to review those sources or knowingly rejected them.

64.     Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from his Chapter 7 Bankruptcy.

65.     However, Defendants failed to accurately report Plaintiff's Accounts and inaccurately reported the Accounts as a charge-off with outstanding balances, but failed to mention that they were discharged in Plaintiff's Chapter 7 Bankruptcy.

66.     Upon information and belief, Defendants received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

67.     Defendants also obtain information from other CRAs (who commonly share information).

68.     Defendants are aware that CRAs are generally required to report accounts that were actually discharged in the bankruptcy proceedings as included and discharged in bankruptcy.

69.     Defendants should have reported the Accounts with a zero balance and discharged in Plaintiff's Chapter 7 Bankruptcy.

70.     Instead, Defendants incorrectly reported the Accounts as derogatory accounts with outstanding balances.

71.     Defendants inaccurately reported the Accounts and failed to properly consider the Plaintiff's Chapter 7 Bankruptcy and the affect it had on relevant accounts.

72.     In any event, Defendants knew or had reason to know that the reported information was contradicted by notices received from third parties as well as from the bankruptcy proceedings themselves.

73.     If not patently inaccurate, Defendants' inaccurate reporting of the Accounts is materially misleading.

*Plaintiff's Damages*

74.     As a preliminary matter, Defendants failed to report the Accounts accurately because they are reporting as a charge-off and that it was not discharged

in Plaintiff's bankruptcy when the Accounts were clearly referenced in the bankruptcy as Accounts that were discharged.

75.    Plaintiff's creditworthiness is lowered because Defendants reported the Accounts as charge-off accounts with outstanding balances when it was a debt that was included and discharged in Plaintiff's Chapter 7 Bankruptcy.

76.    As an individual attempting to improve her credit score for future credit transactions, the Plaintiff was harmed because of Defendants' inaccurate reporting of the Accounts and when Defendants misinformed third parties about the effect of the Plaintiff's Chapter 7 Bankruptcy.

77.    Defendants' consumer report failed to report the Accounts and Plaintiff's Chapter 7 Bankruptcy appropriately, which causes severe damage to Plaintiff's creditworthiness and his financial wellbeing.

78.    Plaintiff's consumer credit file and consumer reports were reviewed by numerous entities after the discharge of his bankruptcy; those entities viewed the erroneous information published by Defendants.

79.    As a direct result of Defendants' inaccurate reporting, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

80.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish,

disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

81.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

82.    Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

83.    Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy accounts after a consumer receives a Discharge Order.

84.    Defendants received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Defendants through sources of consumer information such as Lexis-Nexis, Defendants' own files, and information provided by data furnishers, yet Defendants misapplied that information.

85.    Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file Chapter 7 Bankruptcies.

16

86. Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

87. Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update accounts that were actually included in a bankruptcy, as required by 15 U.S.C. § 1681(e)(b).

88. Defendants know the information that they report about consumers' bankruptcies is often inconsistent with public records and their own files.

89. However, Defendants failed to report the Accounts accurately, reporting them as a charge-off with a balance when they were accounts were included and discharged in Plaintiff's Chapter 7 Bankruptcy.

90. Defendants' failure to maintain and employ reasonable procedures to assure the information they report is accurate is particularly egregious because the Defendants regularly and voluntarily search for consumer bankruptcy information to include in credit files.

91. Defendants knew or should have known that they are obligated, by the FCRA, to maintain and employ reasonable procedures to assure they report maximally accurate consumer credit information.

92. Defendants knew or should have known that they are obligated, by the FCRA, to update their consumer reports and the relevant tradelines.

93.     Defendants knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge debts that were created prior to the bankruptcy proceedings.

94.     CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendants.

95.     Therefore, Defendants have ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

96.     If Defendants contend that they did not have sufficient notice, Defendants must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file for Chapter 7 Bankruptcy.

97.     Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties for a profit.

98.     When Defendants received notice of Plaintiff's bankruptcy information, they had an obligation to ensure they reported Plaintiff's discharge and its effects with maximal accuracy, and to report accounts as included in the bankruptcy.

99.    Unfortunately, Defendants willfully and consciously breached their duties as a CRA and deprived Plaintiff of her right to a fair and accurate consumer report.

100.    Despite knowledge of their legal obligations, Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

101.    Defendants know that a debt that was included and discharged in a bankruptcy should be reported as discharged on credit reports and not as a negative account with a balance.

102.    Defendants knew or should have known the information the reported information on the Accounts was inaccurate.

103.    Defendants violated 15 U.S.C. § 1681e(b) by failing to report accurate information when the Defendants knew or should have known that the information Defendants were reporting was inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and/or reasonably available to Defendants.

104.    Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

105.    Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

106.    Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

107.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendants for failing to report Plaintiff's Chapter 7 Bankruptcy accurately and for failing to report the Accounts accurately, since it was discharged in Plaintiff's Chapter 7 Bankruptcy.

108.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

109.   Defendants are a direct and proximate cause of Plaintiff's damages.

110.   Defendants' actions are substantial factor in Plaintiff's damages.

111.   Therefore, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

## JURY DEMAND

Plaintiff demands and hereby respectfully requests a trial by jury for all claims and issues presented in this Complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants, Equifax Information Services, LLC and Experian Information Solutions, Inc., for the following:

a)     For declaratory judgment that Defendants violated the FCRA at 15

       U.S.C. § 1681e(b).

b)     For actual damages provided and pursuant to 15 U.S.C. §§

       1681n(a)(1) and 1681o(a)(1);

c)     For statutory damages provided and pursuant to 15 U.S.C.

       §§ 1681n(a)(1) and 1681o(a)(1);

d)     For punitive damages provided and pursuant to 15 U.S.C.

       § 1681n(a)(2);

e)     For attorney fees and costs provided and pursuant to 15 U.S.C.

       §§ 1681n(a)(3), and 1681o(a)(2);

f)     For any such other and further relief, as well as further costs, expenses

       and disbursements of this action as this Court may deem just and

       proper.


Dated:  November 27, 2024                          Respectfully Submitted,


                                          /s/ *Yaakov Saks*
                                          **Stein Saks, PLLC**
                                          By: Yaakov Saks, Esq.
                                          One University Plaza, Ste 620
                                          Hackensack, NJ 07601
                                          Phone: (201) 282-6500
                                          Fax: (201)-282-6501
                                          ysaks@steinsakslegal.com